## In re Anonymous No. 127 D.B. 91

Disciplinary Board Docket No. 127 D.B. 91.
*Hearing Committee*, February 26, 1993—

## SUMMARY OF CASE

An amended petition for discipline filed May 21, 1992 alleges professional misconduct in violation of Rules of Professional Conduct 4.2 and 8.4(a).

The only issue is whether the respondent's actions in preparing and delivering to his clients a deed, at their request, for presentation to two of the opposing parties in a foreclosure action constitutes improper contact with a represented party and/or an attempt to induce his clients to violate a Rule of Professional Conduct.

The Hearing Committee concludes that the respondent did not violate any of the Rules of Professional Conduct with which he was charged and that respondent should not be subject to any disciplinary action.

## STATEMENT OF CASE

A petition for discipline was filed by the petitioner, Office of Disciplinary Counsel, on January 7, 1992 and later amended on May 21, 1992, charging the respondent, [   ], with violation of the provisions of the following Rules of Professional Conduct:

(A) R.P.C. 4.2, which prohibits a lawyer from communicating with a represented party unless he has consent of the other lawyer or is authorized by law to do so;

(B) R.P.C. 8.4(a), which prohibits a lawyer from knowingly assisting or inducing another to violate or attempt to violate the Rules of Professional Conduct.

Upon being duly served, respondent delivered an answer to the Office of Disciplinary Counsel to the original petition which was filed on March 4, 1992, and later filed an amended answer on May 21, 1992, per stipulation

approved by the chairman of the Disciplinary Board. The matter was initially referred to Hearing Committee [    ] but was reassigned to Hearing Committee [    ] on September 3, 1992.

In accordance with proper notice, a hearing was held on October 21, 1992. The parties presented a stipulation as to facts and exhibits. No additional evidence was presented by Disciplinary Counsel in support of the allegations of misconduct. Respondent testified. Respondent also called as a witness, his client, [A]. [A] testified that after conveying a parcel of property to four purchasers, a dispute arose as to a mortgage and judgment note and other matters relative to his remaining on the premises. Litigation followed and with a foreclosure hearing imminent, he undertook direct negotiations with two opposing defendants, husband and wife (the [B]), to reconvey their half-interest in the subject property in settlement of his claim against them. The [B] owned half the property as tenants in common with another couple who were also defendants in the foreclosure action brought by [A]. Respondent did not participate in the direct negotiations and agreement reached between the parties. [A] then asked respondent to prepare the deed of conveyance. Because of the Jewish holiday, other than receipt of information necessary for his secretary to complete the deed, respondent had no contact with his clients until the date of the foreclosure hearing, five days later, at which time the fully executed deed conveying the [B's] interest in the property to his clients was given to him for filing. Respondent acknowledged that he at no time advised opposing counsel representing the [B] of his clients' request or intentions in advance of the foreclosure hearing.

In part because of the lack of legal precedent on the issue presented, the Hearing Committee determined that a prima facie showing of a violation had been made and

proceeded to reconvene and accept evidence relating to disposition.

The transcript was filed with the secretary of the Disciplinary Board on or about October 27, 1992. Briefs were submitted by the parties. Petitioner took issue with respondent attaching additional evidence in the form of exhibits attached to respondent's brief and subsequently filed an application with the committee to reopen the record to respond to information respondent had injected into the proceedings in his brief.

Respondent filed an answer to petitioner's application to reopen record and offered to withdraw the contested exhibits.

After giving due consideration, the Hearing Committee determined it was unnecessary to reopen the record and accept additional evidence in view of respondent's voluntary withdrawal of the exhibits attached to his brief.

## FINDINGS OF FACT

The Hearing Committee adopts and incorporates by reference thereto as if fully set forth herein the stipulation of facts admitted at the hearing:

(44) There is no ethical rule that prevents parties to a matter from communicating directly with each other.

(45) In preparing said deed, respondent did not suggest, advise, or otherwise cause his clients to communicate with the [B] in an effort to negotiate a settlement without the knowledge of counsel for the [B] and other adverse defendants.

(46) In preparing said deed, at the request of his clients, respondent did not engage in a course of conduct designed to conceal from opposing counsel the negotiations and agreement reached directly between his clients and the [B] from the [B's] own counsel.

## DISCUSSION

The Hearing Committee recognizes the dearth of case law in Pennsylvania on the issue presented. Disciplinary counsel relies on cases from other jurisdictions in support of his position that it was unethical and a violation of Disciplinary Rules to prepare the deed as requested without notifying opposing counsel. The Hearing Committee has carefully reviewed the cases relied upon and believes each is distinguishable. In the instant case, respondent did not induce his client to attempt a negotiation directly with the adverse party without knowledge of the adverse party's counsel. Rather, the discussions which led to the request for the deed were the result of direct contact between the adverse parties. Nor is there any evidence to suggest the respondent was aware of the settlement proposal between his clients and the [B] prior to the request to prepare the deed or that the adverse parties' counsel knew or did not know of the intentions of his clients, the [B], at the time respondent prepared the deed. There is simply no evidence of record to support the allegation that respondent initiated or assisted his clients in contacting and commencing negotiations with the opposing parties in violation of any Disciplinary Rule.

In the absence of any Pennsylvania authority, the Hearing Committee believes an infraction of the Disciplinary Rules has not been established. We are mindful, and state for the record, that we do not condone some of the actions of respondent throughout the course of the underlying litigation. At the very least, it exhibits lack of professional courtesy. But limited to the narrow issue of whether the Disciplinary Rules were violated when respondent prepared and delivered a deed to his clients, at their request and without any evidence of participation on his part in the negotiations and discussions which

led to the request, the board must find that respondent did not violate the Disciplinary Rules as charged.

## CONCLUSIONS OF LAW

The Hearing Committee finds that respondent, by his conduct, did not violate the following Rules of Professional Conduct:

(1)  R.P.C. 4.2;

(2)  R.P.C. 8.4(a).

## RECOMMENDATION

For the foregoing reasons, this Hearing Committee respectfully recommends that the petition for discipline be dismissed.

## STIPULATIONS OF FACT

(1)  The respondent, [    ], was born in 1928, was admitted to practice law in the Commonwealth on November 26, 1956, and maintains his office at [    ].

(2)  On June 11, 1987, [A] conveyed a parcel of land in [    ], [    ] County, to [C] and [B]. The parcel included both residential property and a portion developed as a campground.

(3)  At the same time, the [C] and the [B] gave a mortgage and judgment note in the amount of $455,000 to the [A]. Quarterly payments in the amount of $9100 were payable in September 1987, December 1987, March 1988, June 1988, and thereafter.

(4)  At the time of closing, the [A] retained possession of a residence on the premises pursuant to an agreement between the parties. There was subsequently a dispute as to the nature of this tenancy. The [A] contended that they were entitled to remain in the premises without payment of rent until they could construct a home after being

paid the sum of $80,000 from the sale of one of the purchasers' houses or otherwise.

(5) The [C] and the [B] were represented by attorney [D], of the firm of [E]. The respondent represented the [A].

(6) On October 1, 1987, [D], counsel for the [C] and the [B], wrote to the [A] expressing the view of his clients that the agreement required the [A] to vacate the residence by September 30, 1987.

(7) On November 30, 1987, the [C] and the [B] brought suit against the [A], docketed to no. [    ] Civil 1987, Court of Common Pleas of [    ] County, Pa., seeking ejectment of the [A] from the residence on the premises, and injunctive relief, replevin, and other relief regarding certain businesses allegedly conducted by the [A] on the premises.

(8) The [C] and the [B] did not make mortgage payments due in December 1987, March 1988, and June 1988. One late payment was made in April 1988, and partial payments were tendered but rejected.

(9) On April 21, 1988, respondent filed a complaint in mortgage foreclosure on behalf of the [A] against the [C] and the [B]. This action was docketed to no. [    ], Civil, in the Court of Common Pleas of [    ] County, Pa.

(10) The two actions were consolidated and trial was set for September 14, 1988.

(11) The [B] developed a desire to sell their interest in the campground and get out of the arrangement and the litigation. They asked [D] if they could sell their interest in the realty and the business, and [D] advised them that this could be done. The [B] did not discuss any particular proposal with [D].

(12)  The [B] then negotiated to sell their interest in the campground to the [A], and an agreement of sale was reached September 8, 1988.  No counsel were involved in or advised of these negotiations.

(13)  On or about September 9, 1988, respondent's client, [A], advised respondent that he was negotiating with the [B] and might be able to make a deal to purchase the [B's] interest in the premises, and asked him to prepare a deed in case the [B] would convey their interest in the premises to the [A].  Respondent dictated a deed late in the evening and directed his secretary to prepare it and turn it over to the [A].  She did so.  The [B] executed the deed.  Respondent did not see this deed until the morning of the trial on September 14, 1988.

(14)  Respondent did not have any direct contact with the [B] about this conveyance or any other issue.  The conveyance was negotiated entirely between the [A] and the [B].

(15)  Respondent did not notify counsel of record for the [B], attorney [D], of this event either before preparing the deed or before the opening of the trial.  Respondent, believing that it was the responsibility of the [B] to communicate with their own counsel, did not seek [D's] permission to prepare the requested deed.

(16)  The deed from the [B] to the [A] was executed bearing the date September 12, 1988.  On September 14, 1988, the [A] gave the deed to respondent, who recorded it the morning of the trial, September 14, 1988.

(17)  The [B] did not advise attorney [D] that they had executed the deed, and [D] learned of this deed for the first time during [B's] testimony at the trial on September 14, 1988.

(18)  When attorney [D] learned of the execution of this deed by the [B], he realized that there could be a

conflict between the interests of his clients and moved to continue the trial and to withdraw. These motions were granted by the court, and the court directed both the [C] and the [B] to obtain new counsel.

(19) After the hearing was continued, attorneys [F] and [G] entered their appearances on behalf of the [C] and the [B], respectively.

(20) On September 27, 1988, attorney [F] filed a complaint in equity seeking injunctive relief to undo the purported conveyance of September 12, 1988, from the [B] to the [A].

(21) On October 5, 1988, all parties appeared, and the attorneys entered into negotiations to resolve the matter. A stipulation was read into the record which was approved by the court.

(22) The attorneys for the plaintiffs, [F] and [G], later contended that the negotiated agreement included a term that the [A] would reconvey the [B] interest back to them, and that this term was inadvertently omitted from the recital of the stipulation. Respondent later contended that the stipulation did not provide for any reconveyance. There were other disputed issues as to the stipulation as well, including the amount of the arrearages to be paid and whether a parcel retained by the [A] was to be conveyed.

(23) On November 15, 1988, attorney [F], on behalf of the [C], filed three motions, including a motion to strike the stipulation and motions to consolidate and for injunctive relief. These motions sought amendment of the stipulation to include the term regarding reversal of the September 12 conveyance, as discussed in the negotiations of October 5, 1988, and to clarify the amount of arrears to be paid. The [A] and the [B] separately filed responses.

(24) On December 19, 1988, attorney [F] and attorney [G] appeared before the court. At that time the court allowed attorney [F] to amend her motion to strike the stipulation into one which sought to modify the stipulation to reflect alleged oral understandings of the parties.

(25) In an opinion dated March 2, 1989, the court denied injunctive relief, but held that the provisions of stipulation, both as read into the record and negotiated by the parties, were enforceable and binding on all parties. The court set a hearing for April 17, 1989, to allow the attorneys who conducted the negotiations leading to the stipulation to testify as to their understanding of the exact terms of the agreement on which the stipulation was based. The court advised all parties to obtain other counsel for the purposes of this hearing, as counsel would be required to testify.

(26) On April 17, 1989, all parties appeared. The [C] and the [B] appeared represented by new counsel, but the [A] advised the court that they were without other counsel. The court continued the hearing and directed all parties to appear with new counsel.

(27) On April 28, 1989, the respondent filed a petition for review with the Superior Court seeking to overturn the court's order of March 2, 1989, which was docketed to no. [   ] miscellaneous docket no. [   ], [   ]. The Superior Court, per curiam, denied the petition for review on June 13, 1989.

(28) The evidentiary hearing was held May 31, 1989, at which counsel for all parties testified as to their understanding of the nature of the agreement that led to the stipulation.

(29) On July 13, 1989, the court entered an opinion and order bearing the nominal date June 13, 1989.

(30) On July 26, 1989, respondent filed a notice of appeal of the order entered July 13, 1989, to the Superior Court.

(31) The [A] believed that the [C] and the [B] committed a new default on the mortgage by failing to make a payment in July 1989. On July 18, 1989, respondent issued a notice of intention to foreclose mortgage (Act 6 Notice) to the [B].

(32) On July 28, 1989, the court entered an order correcting the date of the order entered July 13, 1989.

(33) On August 8, 1989, the [C] filed a motion for contempt or, in the alternative, application for supersedeas upon posting of security, alleging that the [A] had not complied with the court's order of July 13, 1989, by conveying the disputed interest back to the [B].

(34) On August 13, 1989, the [A], through respondent's office, executed a deed in compliance with the order of July 13, 1989, conveying their interest in the property back to the [B], which was recorded at Deed Book [    ], page [    ] of the recorder of deeds of [    ] County, on August 17, 1989.

(35) On August 16, 1989, the [B] executed a deed conveying back to the [A] the same interest that had been conveyed to them by the corrective deed dated August 13, 1989. A notation typed on the deed stated, "This deed is given in lieu of foreclosure, pursuant to default of July 11, 1989." (Exh. no. 29)

(36) The [B] advised [G] that they did not desire his representation on August 11, 1989, and thus they were not represented by counsel at the time they executed the deed of August 13, 1989.

(37) The [B] did not advise either the [C] or [G] that they intended to and in fact did execute the deed in lieu of foreclosure.

(38) Respondent did not prepare the deed in lieu of foreclosure, and did not contact the [B] directly in the negotiation of either conveyance.

(39) The [A] to [B] deed of August 13, 1989, and the [B] to [A] deed executed August 16, 1989, were both recorded by [A] in the recorder of deeds office at the same time, at 2:34 p.m. on August 17, 1989.

(40) In response to the [C's] motion for contempt of August 8, 1989, the court entered an order on August 30, 1989, specifically directing the [A] to "properly execute a deed for the conveyance required by the court's order dated June 13, 1989, as amended July 28, 1989..." and setting hearing on the matter for September 26, 1989. (Exh. no. 30)

(41) On September 18, 1989, respondent filed an answer to the motion for contempt and the court's order of August 30, 1989.

(42) On October 13, 1989, the court entered an opinion and order, directing the [A] to convey the interest back to the [B], to pay the [C's] attorneys' fees, and to pay damages to the [C] at the rate of $800 per month for the period from July 13, 1989, until the date of the order (October 13, 1989).

(43) All of the cases were settled and discontinued by stipulation dated December 28, 1989, approved by the court on January 6, 1990. The appeals to the Superior Court were discontinued on January 16, 1990, and the cases were marked settled and discontinued in the Court of Common Pleas on February 6, 1990.

## ORDER

And now, February 26 , 1993, upon consideration of the report and recommendation of Hearing Committee [   ] filed February 1, 1993, it is hereby ordered that the charges against [respondent], docketed at no. 127 D.B. 91, be dismissed.